UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA COLE, as personal representative of the Estate of Antonio Carvalho, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 15-10955-LTS<br>) |
| CITY OF NEW BEDFORD, et al., | )<br>) |
| Defendants. | )<br>) |

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
[Docket Nos. 6, 20]

June 10, 2015

Boal, M.J.

This is a negligence, intentional tort and civil rights action arising out of the death of Antonio Carvalho. Plaintiff Anna C. Cole is the daughter of Carvalho and the personal representative of his Estate. She brings, inter alia, claims for negligence and loss of consortium against defendants Alda Machado and Anodyne Homemaker Services Corporation ("Anodyne"), who provided home care to Carvalho.[1] Anodyne and Machado have moved to dismiss the claims against them for failure to state a claim. Docket No. 6, 20.[2] For the following reasons, this Court recommends that the District Judge assigned to this case deny the motions to dismiss.

---

[1] Cole also brings claims against the City of New Bedford and New Bedford police officers John DaFonte, Jean Gomes, Matthew Bolduc, and Alan Lord. These defendants have filed an answer to the Amended Complaint. Docket No. 8.

[2] The District Court referred these motions to the undersigned for a report and recommendation on April 21, 2015 and May 27, 2015. Docket Nos. 12, 22.

1

I.   PROCEDURAL BACKGROUND

Cole originally filed this action in Bristol County Superior Court on November 24, 2014. Docket No. 5 at 5, 7-13. On February 27, 2015, she filed an Amended Complaint. Docket No. 5 at 5, 19-31. Defendants City of New Bedford, DaFonte, Gomes, Bolduc and Lord removed the action to this court on March 18, 2015. Docket No. 1.

Anodyne and Machado are named in Counts I (negligence and wrongful death) and Count IX (loss of consortium). On March 31, 2015, Anodyne moved to dismiss the claims against it. Docket No. 6. Cole filed an opposition on April 10, 2015. Docket No. 9. Machado filed her motion to dismiss on May 27, 2015. Docket No. 20. Cole filed an opposition on June 2, 2015. Docket No. 24. The Court heard oral argument on June 3, 2015.

II.   FACTS[3]

Carvalho suffered from advanced dementia and lived at home with his wife Lurdes Carvalho. Amended Complaint ("AC") ¶ 10.[4] As a result of his dementia, Carvalho required twenty-four hour care. AC ¶ 11. Carvalho's family hired Anodyne to provide home care for Carvalho. AC ¶ 12.

Anodyne and its employee Alda Machado knew that Carvalho's advanced dementia caused him to become agitated and occasionally try to leave the home. AC ¶ 13. Anodyne had a protocol in place to handle such situations. Id.

---

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in Cole's favor. See Morales-Tañón v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[4] The Amended Complaint is contained at Docket No. 5, pages 19-31.

2

On the evening of November 28, 2011, Carvalho was under the care of Machado. AC ¶ 14. He became agitated and left his home. Id. Instead of following the protocol to get Carvalho back into his home, Machado called 911. AC ¶ 15.

In response to Machado's 911 call, New Bedford police officers DaFonte, Gomes, Bolduc and Lord (collectively, the "Officers") arrived at Carvalho's residence. AC ¶ 16. Machado told the Officers that Carvalho suffered from advanced dementia and was agitated and confused. AC ¶ 17. Despite having knowledge of Mr. Carvalho's state, the Officers did not use caution in approaching Carvalho, which caused him to become more confused, upset and scared. AC ¶ 18.

The Officers escorted Carvalho back inside his home. AC ¶ 19. Once Carvalho was inside his home, the Officers and Machado failed to call Carvalho's family members to assist Carvalho and make a decision whether Carvalho needed medical treatment. AC ¶ 20. Instead, the Officers and Machado forced Carvalho to go to the hospital. Id.

Carvalho refused to go to the hospital. AC ¶ 21. Officer DaFonte picked Carvalho up off the bed, threw him to the floor, twisted his arms behind his back and handcuffed him. AC ¶ 22. Officer DaFonte twisted Carvalho's left arm with such force that it snapped. Id.

Carvalho was subsequently transported to St. Luke's Hospital in an ambulance against his will. AC ¶ 24. When he arrived at St. Luke's Hospital, he was diagnosed with a proximal humerus fracture and a low surgical neck fracture as a result of the excessive force used by the Officers. AC ¶ 25.

Carvalho never went home. AC ¶ 26. As a result of his hospitalization and severe trauma, Carvalho's health declined quickly and he died on January 10, 2012. Id.

III.   ANALYSIS

   A.   Standard Of Review[5]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28-29 (1st Cir. 2011) (citation omitted). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

---

[5] Cole has suggested that the Court should apply a more lenient standard of review than the one described herein. Docket No. 9 at 10; Docket No. 24 at 10. The Court declines to do so.

B.  Plaintiff Has Sufficiently Pled Causation

To prevail on a claim of negligence,[6] "a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Lev v. Beverly-Enters.-Mass., Inc., 457 Mass. 234, 239-40 (2010) (citation omitted). Anodyne moves to dismiss the claims against it solely on the ground that Cole has failed to sufficiently plead the element of causation. Docket No. 7 at 3-7. The Court disagrees.

"[O]ne cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff." Kent v. Commonwealth, 437 Mass. 312, 320 (2002) (citations omitted). The plaintiff must show that the negligent conduct was both the "cause in fact" of the injury and that it was a proximate or legal cause of the injury. Id. (citation omitted). A defendant's breach of a legal duty is a cause in fact of the plaintiff's injury if that injury would not have occurred "but for" the breach. Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 836 (1st Cir. 1990). Whether negligent conduct is the proximate or legal cause of an injury depends on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct. Kent, 437 Mass. at 320 (citing Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 105 (1978)). "It is irrelevant whether [the defendant] foresaw or should have foreseen the *specific* danger that occurred. . ." Davis v. United States, 670 F.3d 48, 55 (1st Cir. 2012) (emphasis in original;

---

[6] Count I of the Amended Complaint is named "Negligence and Wrongful Death Under M.G.L. c. 229, § 2." To prevail on a wrongful death claim, pursuant to M.G.L. c. 229, § 2, Cole must prove, inter alia, negligence on the part of the defendants that caused the death of Carvalho. See Gianocostas v. Interface Group-Massachusetts, Inc., 450 Mass. 715, 727 n. 13; M.G.L. c. 229, § 2 ("A person who . . . by his negligence causes the death of a person . . . shall be liable in damages . . .").

5

citation omitted). "It is sufficient that the same general kind of harm was a foreseeable consequence of the defendant's risk-creating conduct." Id.

"The question whether the risk of injury was foreseeable is almost always one of fact." Christopher v. Father's Hurdle Café, Inc., 57 Mass. App. Ct. 217, 226 (2003) (citation omitted). Therefore, questions of causation are usually left to the jury. Id.

Anodyne first argues that Machado's[7] alleged conduct was not the cause in fact of Carvalho's injuries. Docket No. 7 at 3. It points out that Cole alleges that Machado breached her duty of care by failing to properly care for Carvalho according to the established protocol to get him back into his home. Id. Because Cole alleges that Carvalho was in fact brought safely inside his home, Anodyne argues that whether the protocol was followed or not did not make a difference in the outcome. Id. Anodyne's argument is not persuasive. Cole alleges that instead of following the protocol, Machado called 911. AC ¶ 15. The Officers arrived at the residence in response to the 911 call. AC ¶16. Had Machado not called 911, the Officers would not have arrived and they would not have injured Carvalho. Therefore, the Amended Complaint sufficiently pleads causation in fact.

Anodyne also argues that Anodyne's conduct was not the proximate cause of Carvalho's injury because it was not foreseeable that it would result in tortious conduct by the Officers.

---

[7] Cole's negligence claim against Anodyne is based on a "respondeat superior" theory. See AC ¶¶ 33-35. "[R]espondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319-320 (2002). An employer will be held liable on a respondeat superior theory if its employee was acting on behalf of or upon the direction of her employer, i.e., she was acting in the scope of her employment. Kelly v. Middlesex Corp., 35 Mass. App. Ct. 30, 32 (1993). Cole alleges that Machado was acting as an agent of Anodyne and that her actions were taken within the scope of her employment with Anodyne. AC ¶¶ 33-34. Anodyne has not challenged the sufficiency of those allegations in connection with this motion.

Docket No. 7 at 4-7. Anodyne again focuses on Cole's allegation that Machado failed to follow the established protocol for getting Carvalho back into his home, characterizing it as "the lone alleged basis for negligence against Anodyne." Id. at 5.

Anodyne's argument mischaracterizes the allegations in the Amended Complaint. Cole alleges not only that Machado failed to follow the established protocol but also that she failed to call family members to assist Carvalho and to decide whether further medical assistance was necessary, and that she forced Carvalho to go to the hospital. AC ¶¶ 15, 20. Under those circumstances, it would be foreseeable that things might have gotten out of hand, leading to Carvalho's injuries. For purposes of a motion to dismiss, as alleged in the Amended Complaint, it would be foreseeable that an agitated, scared and confused man with advanced dementia might refuse to go to the hospital and that he could be seriously injured while being forcibly removed from his home by police officers.

Anodyne argues that this case is controlled by Parker v. Chief Justice for Admin. & Mgmt. of the Trial Court, 67 Mass. App. Ct. 174 (2006). Docket No. 7 at 5-6. In Parker, probation officers misidentified the plaintiff; accompanied police officers to pick up the plaintiff on a warrant; and watched as police officers brutally attacked plaintiff. The court found that it was not foreseeable that the probation officers' negligence in misidentifying the plaintiff would lead to a tortious, and perhaps even criminal, assault by the police officers. Parker, 67 Mass. App. Ct. at 180. Parker is distinguishable, however, because the duty owed by a probation officer to a mistaken third party is significantly different than the duty allegedly owed by Anodyne and Machado as caretakers to Carvalho. See Kelly v. O E Plus, Ltd., 69 Mass. App. Ct. 1105, 2007 WL 1584260, at *2 (June 1, 2007) (unpublished) ("The duty of care owed and the foreseeability of risk are part of the same analysis because '[w]hether negligent conduct is the

7

proximate cause of an injury depends not on factual causation, but rather on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct.'"). Here, Cole alleges that Anodyne was hired to care for Carvalho and protect him from harm and that procedures were in place that Anodyne failed to follow. AC ¶¶ 12-13, 15, 20. Therefore, Parker is inapposite.

Accordingly, the Court finds that Cole has plausibly alleged causation.

IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny Anodyne and Machado's motions to dismiss.

V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge